IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| YVETTE MARIE PETROVAL, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | )<br>)<br>) |
| Defendant, | |

2:25-CV-00071-MJH

OPINION AND ORDER

Pending before the court is an appeal from the final decision of the Commissioner of Social Security denying the claim of Yvette Marie Petroval for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g). Ms. Petroval contends the Administrative Law Judge (the "ALJ") erred by finding she could perform her past relevant work because the ALJ failed to consider Ms. Petroval's work as a composite job.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The matter is now ripe for decision.  Following consideration of the respective motions and briefs (ECF Nos. 10, 11, 12, and 13), and for the following reasons, Plaintiff's Motion for Summary Judgment will be granted, and Defendant's Motion for Summary Judgment will be denied.

**I.      Relevant Law and Background**

      A.  Social Security Disability Eligibility

To be eligible for Social Security benefits under the SSA, a claimant must demonstrate that he or she cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine:

1. whether the claimant is currently engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or a combination of impairments that is severe;

3. whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1;

4. whether the claimant's impairments prevent him from performing his past relevant work; and

5. if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).

If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

B.  Background

In applying for Social Security Disability, Ms. Petroval alleged disability based upon nephrotic syndrome diffuse membranous glomerulonephritis, high cholesterol, and high blood

pressure. (ECF No. 4-3 at p. 3).  At the ALJ hearing, Ms. Petroval testified she last worked in November 2022 as a business consultant for a casual restaurant. (ECF No. 4-2 at p. 38). As a business consultant, Ms. Petroval stated that her duties included performing floor openings, training staff, unloading trucks, and directing staff where equipment should go. *Id*.  She testified she would work the floor in the kitchen, the prep area, register, cook, and once the stores were open, she would inspect the store to ensure it met all franchise criteria. *Id*.   In the consultant position, Ms. Petroval testified that she would lift 50-pound bags of food. Ms. Petroval would also travel around areas in the country and select restaurant site location. *Id*. at pp. 38-39.

 Prior to the consultant job, Ms. Petroval served as a senior director of operations where she would travel and meet with franchisees in their location. *Id*. at p. 40.  In this position, she mentored the franchise business consultant and instruct them what to pursue when they open stores. *Id*. at p. 40.   She would also inspect the stores and select sites for new stores. *Id*. at p. 40.  She testified that this position also involved lifting 40-50 pounds. *Id*.

In 2009, she was a director of a Netflix warehouse where she oversaw six distribution centers. *Id*. at p. 41.  In this position, Ms. Petroval trained employees and lifted trays of mail that each weighed 30-35 pounds.  *Id*. She testified to pushing carts that could be up to 200 pounds. *Id*.

As part of the administrative record, Ms. Petroval submitted a Social Security Administration "Work History Report" form which described her past relevant work and attendant duties.  (ECF No. 4-6 at pp. 20-25; Exhibit 4E in the administrative record).  For her three past relevant jobs, she checked that she would frequently lift up to 25 pounds. *Id*.  The form describes frequently as "1/3 to 2/3 of the workday." *Id*.

    C.  ALJ Decision

Following a hearing on Ms. Petroval's application for a period of disability and disability insurance benefits, the ALJ made the following findings under the five-step sequential analysis:

\*\*\*

2. The claimant has not engaged in substantial gainful activity since February 7, 2022, the alleged onset date (20 CFR 404.1571 et seq.). **[STEP 1]**

3. The claimant has the following severe impairments: nephrotic syndrome with diffuse membranous glomerulonephritis, stage 3 kidney disease, hypertension, anemia, and history of obesity (20 CFR 404.1520(c)). **[STEP 2]**

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**[STEP 3]**

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that she would be limited to no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling. The claimant could have frequent exposure to vibration and hazards (e.g., heights and moving machinery). **[RFC]**

6. The claimant is capable of performing past relevant work as a training representative, manager, or warehouse manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). **[STEP 4]**

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 7, 2022, through the date of this decision (20 CFR 404.1520(f)).

(ECF No. 4-2 at pp. 13-18).

II.     Standard of Review

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g). The judicial review of a final decision is plenary with respect to questions of law. *Schaudeck v. Comm'r Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual findings, this court must determine whether there is

substantial evidence which supports the findings of the Commissioner. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." *Burns v. Burhart*, 312 F.3d 113, 118 (3d Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. *Id.*; *Fargnoli v. Massonari*, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry). The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196-7 (1947).

III.    Discussion

Ms. Petroval contends that the ALJ finding at step four, that she could perform her past relevant work, is not supported by substantial evidence because the ALJ failed to consider said work as a composite job pursuant to SSR 82-61.[1]  The Commissioner argues that the ALJ's reliance on the Vocational Expert's (VE) testimony provided substantial support for the step four finding.  In response, Ms. Petroval asserts that her job duties contained many significant elements, including lifting or pushing heavy objects, that fell outside of the DOT description for the jobs identified.   Ms. Petroval maintains that the ALJ did not inquire further of the VE about these job duties or attempt to resolve the apparent conflict.  Ms. Petroval concludes that, while

---

[1] SSR 82-61 was rescinded on June 22, 2024, but because Ms. Petroval's claim was adjudicated on March 2024, SSR 82-61 applies to this appeal.

the ALJ is allowed to rely upon VE testimony as substantial evidence, VE testimony must be complete in order to do so.

> SSR 82-61 provides, in relevant part, as follows:
>
> composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert.

SSR 82-61.

In this case, the ALJ employed the services of a VE to assist in classifying Ms. Petroval's past relevant work. The VE classified such past work as a training representative (DOT# 166.227- 010); manager (DOT# 183.117-010); and warehouse manager (DOT# 184.167-114).

The trainer position was classified by the VE as having DOT# 166.227-010 and describes the position as follows:

> Develops and conducts training programs for employees of industrial, commercial, service, or government establishment: Confers with management to gain knowledge of work situation requiring training for employees to better understand changes in policies, procedures, regulations, and technologies. Formulates teaching outline and determines instructional methods, utilizing knowledge of specified training needs and effectiveness of such methods as individual training, group instruction, lectures, demonstrations, conferences, meetings, and workshops. Selects or develops teaching aids, such as training handbooks, demonstration models, multimedia visual aids, computer tutorials, and reference works. Conducts training sessions covering specified areas such as those concerned with new employee orientation, on-the-job training, use of computers and software, apprenticeship programs, sales techniques, health and safety practices, public relations, refresher training, promotional development, upgrading, retraining displaced workers, and leadership development. Tests trainees to measure progress and to evaluate effectiveness of training. May specialize in developing instructional software.

The position of manager (director of operations) was described by the VE as having DOT# 183.117-010, which is described as follows:

> division; manager, plant Directs production, distribution, and marketing operations for branch plant, or assigned territory of industrial organization: Coordinates production, distribution, warehousing, and sales in accordance with policies, principles, and procedures established by MANAGER, INDUSTRIAL ORGANIZATION (any industry) 189.117-022. Confers with customers and representatives of associated industries to evaluate and promote improved and expanded services in area. Develops plans for efficient use of materials, machines, and employees. Reviews production costs and product quality, and modifies production and inventory control programs to maintain and enhance profitable operation of division. Reviews operations of competing organizations, and plans and directs sales program to develop new markets, using sales aids, advertising, promotional programs, and field services. Directs personnel program. Directs preparation of accounting records. Recommends budgets to management. May be designated according to title of area of jurisdiction as Manager, District (any industry); Manager, Local (any industry); Manager, Regional (any industry).

As for Ms. Petroval's third job, which was warehouse manager, the VE classified that job under DOT# 184.167-114, described as follows:

> Directs warehousing activities for commercial or industrial establishment: Establishes operational procedures for activities, such as verification of incoming and outgoing shipments, handling and disposition of materials, and keeping warehouse inventory current. Inspects physical condition of warehouse and equipment and prepares work order for repairs and requisitions for replacement of equipment. Confers with department heads to ensure coordination of warehouse activities with such activities as production, sales, records control, and purchasing. Screens and hires warehouse personnel and issues work assignments. Directs salvage of damaged or used material. May participate in planning personnel-safety and plant-protection activities.

On cross-examination, Ms. Petroval's counsel inquired, with the VEabout composite jobs. Counsel questioned whether Ms. Petroval's past relevant work would encompass other jobs within the DOT. The relevant exchange occurred as follows:

> [Counsel] Okay. You know, for the director of operations warehousing, you know, the work history report talked about carrying and moving product across, you know, it almost sounds kind of like a materials handler type role. And her, you know, moving items around the warehouse, do you think that job could be a composite job with materials handler?
>
> [VE] I think it could be depending upon, you know, how much she was doing it. I was looking at as you can see the description that she wrote as a warehouse shipping operation but in lifting and carrying she did say she moved products to

> various stations. If she was doing that rather continuously throughout the eight-hour day then yes but in either instance it was performed at the medium level.
>
> Q Okay. But I guess that you would agree with me that the job code for director of operations for warehousing didn't include all the tasks that she was performing in that job but that those tasks would be included under the description for materials handler, correct?
>
> A Yes, if she was doing, if she was moving incidental moving of materials if she were doing that on a daily basis for two or three hours, yes.
>
> Q Okay. I guess, where does the requirement that it be more than incidental come from inside the SSA's analysis for determining composite jobs?
> A Well, I'm not really sure what the answer would be to that question but it would seem to me that if it were just an incidental part of her job or any dob it would not be considered a composite. To me a composite job is where you are actually performing the task of more than one occupation on an ongoing, consistent basis. It's not something that happens every now and then.
>
> Q Okay. You know, my understanding of the SSA's definition for a composite job is that it Just has significant elements of two or more occupations and is such has no counterpart within the DOT, you know, I guess put aside the requirement that it be more than incidental it would seem to be that that would fit the definition of a composite job as I've just described it, is that correct?
>
> A Yes.
>
> Q Okay. And the same with cook and the first two jobs that we talked about today, is that correct?
>
> A If she were doing that as routine, regular part of her job, yes.

(ECF No. 4-2 at pp 61-63).  With regard his decision regarding the composite job, the ALJ found as follows:

> Though the claimant's representative argued that the claimant's past relevant work was a composite job, the undersigned finds that the claimant's past relevant work did not have significant elements of two or more occupations. Therefore, the undersigned does not find that the claimant's past relevant work were composite jobs.

*Id*. at p. 18.

As part of the administrative record, Ms. Petroval submitted a Social Security Administration "Work History Report" form which described her past relevant work and attendant duties. (ECF No. 4-6 at pp. 20-25; Exhibit 4E in the administrative record). For her three past relevant jobs, she checked that she would frequently lift up to 25 pounds. *Id*. The form describes frequently as "1/3 to 2/3 of the workday." *Id*.

Here, the VE acknowledges the Work History Report (Ex. 4E) in his testimony and ALJ references it in his decision. However, neither the VE's testimony nor the ALJ's decision discusses Ms. Petroval's assertion with regard to the frequency of lifting in her past relevant jobs. The VE's testimony suggested that anything beyond "incidental lifting" would be considered a composite job, namely a "material handler" under the DOT. But the Work History Report, submitted by Ms. Petroval, suggests a frequency beyond "incidental lifting." Because this Court cannot be certain from the underlying administrative record whether the VE and ALJ gave full consideration of Ms. Petroval's frequency assertion in her Work History Report, it cannot conclude that the ALJ's decision, with regard to step 4 and the possibility that Ms. Petroval's past relevant work included composite jobs, was supported by substantial evidence.

IV.     Conclusion and Order

Accordingly, based upon the foregoing, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Motion for Summary Judgment is denied. The Court will grant Ms. Petroval's appeal, vacate the ALJ's denial of benefits, and remand to the Social Security Administration for further consideration of Ms. Petroval's past relevant work and the ALJ's conclusion at step four consistent with this Opinion and Order.

DATED this 12th day of January, 2026.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge